IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD RIETCHECK and SARA RIETCHECK, on behalf of themselves and on behalf of their minor daughters, DAISY RIETCHECK and SIERRA RIETCHECK, | 04-CV-1239-BR<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| CITY OF ARLINGTON, an Oregon municipal corporation; RUBEN T. WETHERELL, in his personal capacity and his capacity as the Mayor of the City of Arlington; TIMOTHY J. WETHERELL, in his personal capacity and his capacity as the Director of Public Works for the City of Arlington; and ANDERSON PERRY & ASSOCIATES, INC., an Oregon business corporation, | |
| Defendants. | |

JONATHAN M. RADMACHER
TRUNG D. TU
McEwen Gisvold LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, OR  97204
(503) 226-7321

       Attorneys for Plaintiffs

1 - OPINION AND ORDER

**BARRY J. GOEHLER**
**MICHAEL A. LEHNER**
Lehner & Rodrigues, P.C.
1500 S.W. First Avenue, Suite 1015
Portland, OR  97201
(503) 226-2225

>     Attorneys for Defendants City of Arlington, Ruben T.
>     Wetherell, and Timothy J. Wetherell

**DANIEL F. KNOX**
**NOAH JARRETT**
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suites 1500-1900
Portland, OR  97204
(503) 222-9981

>     Attorneys for Defendant Anderson Perry & Associates,
>     Inc.

**BROWN, Judge.**

This matter comes before the Court on the Motion for Summary Judgment (#37) filed by Defendants City of Arlington, Ruben T. Wetherell, and Timothy J. Wetherell; Plaintiffs' Objections to Defendants' Exhibits 1-7 filed in the Reply related to their Motion (#67); and Plaintiffs' Motion to File an Amended Complaint (#49).[1]  The Court heard oral argument on April 28, 2006.

For the reasons that follow, the Court **OVERRULES** Plaintiffs' Objections to Defendants' Exhibits 1-7; **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment; **DENIES**

---

[1] Defendant Anderson Perry & Associates, Inc., also moved for summary judgment (#43).  On March 6, 2006, however, the parties stipulated to the dismissal of this Defendant, and its Motion, therefore, is now moot.

2 - OPINION AND ORDER

Plaintiffs' Motion to File an Amended Complaint; and **GRANTS** Plaintiffs until May 24, 2006, to file a motion to amend their Complaint consistent with this Opinion and Order.

## PLAINTIFFS' OBJECTIONS TO DEFENDANTS' EXHIBITS 1-7 (#67)

In support of their Reply, Defendants filed the Affidavit (#65) of Barry J. Goehler, attorney for Defendants, with seven exhibits identified as Plaintiffs' medical records. Plaintiffs object to the admission of these records on the grounds that they are hearsay, not properly authenticated, and lack foundation. Plaintiffs' medical condition, however, is not materially disputed.

Accordingly, the Court overrules Plaintiffs' Objections to Defendants' Exhibits 1-7 for purposes of Defendants' Motion for Summary Judgment.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#37)

Plaintiffs Richard and Sara Rietcheck on behalf of themselves and their minor daughters brought this action to recover damages arising from Defendants' alleged deprivation of Plaintiffs' substantive due-process rights to be free from "state-created danger" pursuant to 42 U.S.C. § 1983 and from

Defendants' negligence under state law.[2]  Plaintiffs' claims are based on the alleged actions of the City of Arlington; Ruben Wetherell, the former mayor of Arlington; and Timothy Wetherell, the Public Works Director of Arlington, which allegedly caused the contamination of Plaintiffs' tap water and Plaintiffs' resulting illnesses.

Defendants seek summary judgment as to Plaintiffs' claims on the grounds that Plaintiffs have not provided sufficient evidence to establish that Defendants caused Plaintiffs' tap water to be contaminated or that their illnesses were caused by contaminated water.

## **Standards**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a

---

[2] On January 4, 2006, the Court issued an Opinion and Order dismissing Plaintiffs' claim for deprivation of their First and Fourteenth Amendment rights to access to the courts pursuant to 42 U.S.C. § 1983.

4 - OPINION AND ORDER

reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. American West Financial* 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No.1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

### Facts

The following facts are undisputed unless otherwise noted and, if disputed, are stated in the light most favorable to Plaintiffs.

After his family moved to the City of Arlington in 1994, Plaintiff Richard Rietcheck observed Defendants Ruben and Timothy Wetherell digging on Ruben Wetherell's property, installing PVC piping, and opening a City water-system valve. According to

Plaintiffs, the Wetherells tapped the City water supply illegally in order to irrigate their land.

In March 2004, the City of Arlington conducted a water-system improvement project, which involved drilling a new well, modernizing control systems, and reconfiguring water piping. During the course of this project, the City changed the water-supply connection to Plaintiffs' residence. The change involved connecting Plaintiffs' water-service line to a pipe that was across the street and located under Ruben Wetherell's property.

Plaintiffs allege the Wetherells' illegal tapping of the City water line to irrigate their land prior to March 2004 led to contaminated water back-flowing into the pipe that in March 2004 became the new conduit for Plaintiffs' water supply.

Soon after Plaintiffs' water connection was changed, Plaintiffs noticed a difference in the taste, odor, and color of their water. In March 2004, Plaintiffs became ill with symptoms that included fever, vomiting, diarrhea, lethargy, and body aches. Even Plaintiffs' dog became ill, and some of their plants died. Plaintiffs stopped drinking the tap water and complained to the City. Shortly thereafter, Plaintiffs began to feel better. The City then reconfigured Plaintiffs' water supply back to the original pipes. According to Plaintiffs, now they only experience symptoms occasionally.

In Summer 2005 and January 2006, Plaintiffs had four water

6 - OPINION AND ORDER

pipe samples tested for contaminates: two from Ruben Wetherell's irrigation system, one from Plaintiffs' outdoor spigot, and one from the shower knob in Plaintiffs' home. All four samples indicated elevated levels of an industrial chemical named hexavalent chromium.

Plaintiffs' toxicology expert, Dr. Ernest D. Lykissa, Ph.D., M.D. (Molec. Pharmacol.), opined the hexavalent chromium residue in the samples could be present only through the "direct introduction of liquids, or transferring of liquids, containing very high concentrations of [hexavalent chromium]." Dr. Lykissa explained the hexavalent chromium residue on the pipes "would be expected to have contaminated any subsequent water that may have been piped in those pipe segments[,]" and, therefore, "any contact through washing, drinking etc with this contaminated water would have most definitely resulted in a chronic hexavalent Chromium human exposure." The organ most affected by chronic hexavalent chromium exposure is the lung. Dr. Lykissa stated hexavalent chromium is irritating upon inhalation and can cause acute respiratory-distress syndromes, including chest pain. Dr. Lykissa noted exposure to hexavalent chromium may be difficult to detect because it is removed from the body by urination within 24 hours. In fact, it appears hexavalent

7 - OPINION AND ORDER

chromium can be detected only through chelation therapy.[3] Dr. Lykissa, however, did not give an opinion as to the effects of ingesting hexavalent chromium through a liquid.  Plaintiffs contend no physician attributed Plaintiffs' illnesses to consumption of hexavalent chromium because of the difficulty in detecting its presence.

### Discussion

Defendants seek summary judgment on the basis that Plaintiffs have not provided sufficient evidence that Defendants caused Plaintiffs' tap water to be contaminated or that Plaintiffs' illnesses were caused by contaminated tap water that Defendants allegedly introduced.  In their Opposition, Plaintiffs argue there are fact issues precluding summary judgment as to whether Defendants contaminated Plaintiffs' tap water and whether Plaintiffs became sick from drinking their contaminated tap water specifically from the hexavalent chromium that was later identified as residue on certain of Plaintiffs' pipes.

The issue of causation concerning exposure to hazardous substances such as hexavalent chromium involves a complex medical question.  *See Hudjohn v. S&G Mach. Co.*, 200 Or. App. 340 (2005). "When the element of causation involves a complex medical question, as a matter of law, no rational juror can find that a

---

[3] Chelation therapy is a recognized treatment for heavy metal poisoning.  An acid is injected into the blood that binds with metals and allows them to be removed from the body.

8 - OPINION AND ORDER

plaintiff has established causation unless the plaintiff has presented expert testimony that there is a reasonable medical probability the alleged negligence caused plaintiff's injuries." *Baughman v. Pina*, 200 Or. App. 15, 18 (2005).

*Hudjohn* involved a worker who allegedly suffered neurological and cognitive impairments as a result of exposure to hazardous substances. Although there was evidence that the plaintiff had neuropsychological deficits and cognitive impairment, the court held "there is a wide difference between determining whether an injury actually exists and its cause." *Hudjohn*, 200 Or. App. at 352. Even though it was assumed exposure to toxic substances is not good for a person, the court found the plaintiff did not present the expert testimony necessary to show the particular exposure caused the plaintiff actual physical or neurological injuries to a reasonable medical probability. *Id*. at 353-54.

Similarly, in *Chouinard v. Health Ventures*, the court affirmed a directed verdict in favor of the defendant when the plaintiff failed to offer expert testimony to establish within a reasonable medical probability that the plaintiff's undiagnosed brain tumor caused his symptoms. 179 Or. App. 507 (2002).

Here Plaintiffs argue in their Opposition to Defendants' Motion that they were exposed to hexavalent chromium through their tap water as evidenced by the elevated levels of hexavalent

9 - OPINION AND ORDER

chromium found on their shower knob and outdoor spigot more than a year after the first change in Plaintiffs' water supply. Plaintiffs, however, have not presented any evidence that Defendants contaminated Plaintiffs' tap water with hexavalent chromium or that Plaintiffs actually ingested hexavalent chromium. Indeed, Plaintiffs admit no physician opined that their illnesses were caused to a reasonable medical probability by exposure to hexavalent chromium. Thus, Plaintiffs have not produced expert evidence sufficient to establish a connection between Defendants' conduct and the hexavalent chromium ultimately found in Plaintiffs' water system or between Plaintiffs' alleged exposure to hexavalent chromium and their illnesses. Plaintiffs, in fact, have merely provided evidence that certain water pipes were found to contain elevated levels of hexavalent chromium approximately one year after Plaintiffs became ill.

The Court, therefore, grants Defendants' Motion for Summary Judgment as to Plaintiffs' specific claims that Defendants were responsible for contamination of Plaintiffs' tap water with hexavalent chromium and that Plaintiffs became ill as a result of the hexavalent chromium in their tap water.

Viewing the facts in the light most favorable to Plaintiffs, however, a jury, without the assistance of expert testimony, reasonably could infer Defendants' conduct introduced some kind

of contaminant into Plaintiffs' tap water, Plaintiffs experienced illnesses after they were exposed to that contaminated water, those illnesses persisted until Plaintiffs stopped drinking the water, and those symptoms generally disappeared after Plaintiffs' tap water supply was reconfigured by the City. On this record, Defendants have not established they are entitled to summary judgment on this more generic causation issue.

The Court, therefore, denies Defendants' Motion for Summary Judgment as to Plaintiffs' allegations that they experienced illnesses as a result of Defendants' conduct in introducing some kind of contaminant (other than hexavalent chromium) into Plaintiffs' water supply.[4]

## PLAINTIFFS' MOTION TO FILE AN AMENDED COMPLAINT (#49)

Plaintiffs request leave of Court to amend their Complaint to add the following: 1) facts alleging Defendants substantially modified, changed, or destroyed a system of piping and valves after Plaintiffs' illnesses were brought to Defendants' attention and that appear to have contaminated Plaintiffs' water system and 2) a Fifth Claim based on Defendants' negligence under the doctrine of *res ipsa loquitur.*

---

[4] Although the Court denied Defendants' request at oral argument to submit supplemental briefing on this "inference" issue, Defendants will be permitted to brief this issue more fully at a later date.

11 - OPINION AND ORDER

## Standards

Fed. R. Civ. P. 15(a) provides a party may amend a pleading after a responsive pleading has been filed only by leave of court unless the opposing party consents to the amendment. Rule 15(a), however, also provides leave to amend "shall be freely given when justice so requires." "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The Supreme Court has recognized several factors that a district court should consider when determining whether justice requires the court to grant leave to amend. Those factors include:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.

*Id.* at 1052.

A proposed amendment to a complaint "is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997).

## Discussion

Under Oregon law, *res ipsa loquitur* is a rule of evidence rather than a claim for relief. *McKee Electric Co., Inc. v.*

*Carson Oil Co.*, 301 Or. 339, 348 (1986).  Thus, "a rule of evidence should not be pleaded in a claim for relief."  *Id.*  Moreover, Plaintiffs' proposed factual amendments are unnecessary because they do not provide any additional support to new or existing issues.  The Court, therefore, denies Plaintiffs' Motion to File an Amended Complaint in the form proposed.

At oral argument, however, the Court expressed other concerns regarding Plaintiffs' Complaint, specifically as to which claims Plaintiffs are bringing against which Defendants, in what capacity the individual Defendants are being sued, and the elements of Plaintiffs' negligence and state-created danger claims against the Defendants.  The Court also directed the parties' attention to Or. Rev. Stat. § 30.265, which requires all common-law tort actions arising from the acts of public employees to be brought against the public body rather than against the individual.  The Court, therefore, grants Plaintiffs leave to file a motion to amend their Complaint solely to clarify their Complaint in response to the Court's concerns.  Accordingly, if Plaintiffs wish to amend their Complaint, they may file a motion for leave to do so no later than May 24, 2006.

## CONCLUSION

For these reasons, the Court **OVERRULES** Plaintiffs' Objections to Defendants' Exhibits 1-7 (#67), **GRANTS in part** and

13 - OPINION AND ORDER

**DENIES in part** Defendants' Motion for Summary Judgment (#37), and **DENIES** Plaintiffs' Motion to File an Amended Complaint (#49).

The Court also grants Plaintiffs until May 24, 2006, to file a motion for leave to file an amended complaint consistent with this Opinion and Order. If Plaintiffs file such a motion, Defendants' response is due June 2, 2006. In light of the pending deadlines to submit a Pre-Trial Order by June 9, 2006, the Court requests the parties to confer and to confirm no later than June 2, 2006, their intention to proceed with the current schedule. If any party wishes to modify the existing schedule, the party must file an appropriate motion no later than June 2, 2006.

IT IS SO ORDERED.

DATED this 15th day of May, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

14 - OPINION AND ORDER